**Carl VAN VOLKENBURGH,
Respondent,**

v.

**Thomas P. McBRIDE, Appellant.**

**No. WD 55900.**

Missouri Court of Appeals,
Western District.

Aug. 10, 1999.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 5, 1999.

Lawrence E. Kinnamon, Jr., St. Joseph, for respondent.

Daniel Lee Radke, St. Joseph, for appellant.

Before Judge LAURA DENVIR STITH, Presiding, Judge HAROLD L. LOWENSTEIN and Judge ALBERT A. RIEDERER.

LAURA DENVIR STITH, Presiding Judge.

Appellant Thomas McBride appeals a jury verdict for $135,000 against him on claims of negligence and battery in the shooting of Carl Van Volkenburgh. Mr. McBride claims the trial court erred by refusing to grant his motion for a new trial because Mr. Van Volkenburgh's attorney repeatedly violated a pre-trial order which prohibited reference during trial to the criminal case involving the same incident. Mr. McBride also alleges that the trial court erred by instructing the jury it could award damages for future injuries because this aspect of the instruction was not supported by the evidence.

We agree that counsel for plaintiff violated the pretrial order in referring to the criminal trial, but find that this does not merit reversal because counsel for defendant affirmatively waived a mistrial when it was offered by the court and failed to timely request one thereafter. We further find that the evidence did support the submission of future damages. Accordingly, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On February 20, 1995, at approximately 1:00 p.m., Mr. Van Volkenburgh and two co-workers, Ronald Smith and William Wallace, completed their work pouring concrete and decided to go to the Lake Bar and Deli in Buchanan County, Missouri, to drink beer and play darts. The men stayed there until approximately 7:00 p.m., then went to Holt's Tavern in St. Joseph, Missouri, where they continued drinking. After drinking for several hours at Holt's Tavern, they returned to the Lake Bar and Deli. Mr. Van Volkenburgh and Mr. Smith went inside the Lake Bar, while Mr. Wallace went into a wooded area immediately adjoining the Lake Bar's parking lot, presumably to relieve himself. This area had no fence or barriers surrounding it, nor were there any 'No Trespassing' signs visible.

Mr. Van Volkeburgh testified that a few minutes later, he and Mr. Smith left the bar, and Mr. Smith walked toward the wooded area, adjacent to the parking lot. He met Mr. Wallace as the latter was coming out of the wooded area adjacent to the parking lot, and began leading Mr. Wallace by the arm, away from Defendant Thomas McBride, who was approaching them rapidly from behind. Mr. Smith announced loudly that Mr. McBride had a gun. Mr. Van Volkenburgh testified that, when he heard about the gun, he "rushed" Mr. McBride, grabbed him, and they both fell to the ground. Mr. Van Volkenburgh denies ever hitting Mr. McBride, and claims that at no time during the altercation did he possess a broken bottle or any other type of weapon. While the two were wrestling on the ground, Mr. McBride shot Mr. Van Volkenburgh three times in the stomach and abdomen.

Mr. McBride's testimony was significantly different. Mr. McBride, who is an attorney, claimed he shot Mr. Van Volkenburgh in self-defense to "stop the beating" by Mr. Van Volkenburgh and Mr. Wallace. Mr. McBride testified that his tenant and neighbor, Ladina Carter, informed him there was a prowler in the woods nearby who was looking in her trailer windows. Mr. McBride told her to call the sheriff's department, and advised her to remain inside her trailer. Mr. McBride picked up a small handgun and went to look for the "prowler." Mr. McBride saw Mr. Wallace and called to him, but Mr. Wallace did not respond to his inquiries. Ms. Carter then informed Mr. McBride that the sheriff was on his way.

By this time, according to Mr. McBride, Mr. Van Volkenburgh and Mr. Smith had arrived. They grabbed Mr. Wallace and began dragging him into the parking lot. Mr. McBride testified that he had suggested they all wait for the sheriff's deputies to come and conduct their investigation, but that Mr. Van Volkenburgh came towards him and swung at him. Mr. McBride also states he fired a warning shot into the

ground, but that Mr. Van Volkenburgh ignored it and tackled him, and began to beat him about his head, and that Mr. Wallace joined the fight. Mr. McBride admits he then shot Mr. Van Volkenburgh in the leg. It was at that point, Mr. McBride claims, that he noticed a broken beer bottle in Mr. Van Volkenburg's hand and, fearing for his life, fired three shots into Mr. Van Volkenburgh's stomach and abdomen. The bullets hit Mr. Van Volkenburgh's liver, his right kidney, and his diaphragm. One bullet went through Mr. Van Volkenburgh's body and into the chest of Mr. Wallace, who was positioned directly behind Mr. Van Volkenburgh. Mr. McBride testified that he kept shooting until the gun jammed.

Mr. Van Volkenburgh was taken to the local emergency room, where he received emergency surgery and blood transfusions. He required a laparotomy, and the surgeon resected two separate sections of his small intestine. As a result of the injuries sustained in the shooting, Mr. Van Volkenburgh lost 16 inches of his small intestine, and 40 percent of his right kidney.

██ Mr. McBride was tried and convicted of second degree assault on July 10, 1995, but he received a suspended imposition of sentence and five years' supervised probation. A suspended imposition of sentence is not considered a conviction and cannot be used to impeach a witness. *M.A.B. v. Nicely,* 909 S.W.2d 669, 671 (Mo. banc 1995).

Mr. Van Volkenburgh filed the instant lawsuit against Mr. McBride in February 1997, alleging that Mr. McBride either intentionally or negligently shot him. Prior to trial, Mr. McBride filed a motion in limine asking the trial judge to prohibit any reference to the criminal proceedings, including prohibiting any reference to the criminal trial or to the words "convict," "felon," and their derivatives, since evidence of his criminal conviction was not admissible. The trial judge sustained this motion, and the case went to trial on February 17, 1998.

During his opening statement, Mr. Van Volkenburgh's counsel said: "The evidence will be that the defendant withdrew his gun, ... He used his gun. He shot Mr. Carl Van Volkenburgh intentionally criminally." Mr. McBride's counsel did not object to these statements. After counsel for Mr. Van Volkenburgh finished his opening statement, outside the hearing of the jury, the trial judge reprimanded him for violating the pretrial order, and told Mr. McBride he could take his choice – the judge could admonish the jury to disregard the statement about criminal intent, or the judge could grant a mistrial. After consultation with Mr. McBride, who is also an attorney, defense counsel stated that he would not ask for a mistrial and did not want the jury admonished, but requested that Mr. Van Volkenburgh be "strongly warned" against making similar statements during the rest of the trial. The trial judge did just that, warning plaintiff's counsel that:

> It's always up to the Defendant to decide if they want a mistrial or not, because they have — they may feel like they have a — want to get it over with or have other strategic reasons for not requesting it. But if they request it — *if any of that goes on again, if it's requested,* I'll sustain it, and I want you to realize that.

(emphasis added). No more references were made to the criminal trial until Mr. Van Volkenburgh's direct examination of Deputy Murphy. During that examination, Mr. Van Volkenburgh's attorney made at least the following four references to Mr. McBride's "defense attorney:"

1. "... To your knowledge, did the Defendant McBride call his defense attorney, Ron Holliday, to come to the police station that evening?"

2. "And was the Defendant's attorney, Ron Holliday, beckoned to come there, and to be there during the statement (of McBride)?"

3. "... And, Officer, you didn't call and invite Ron Holliday, attorney, to show up there, did you?

4. "Did Mr. McBride, ... when you talked to him in more detail with his attorney at the Law Enforcement Center, did he tell you that when the trouble actually commenced in which he shot (Mr. Volkenburgh) they were actually on the parking lot of the Lake Bar and Grill?"

Mr. McBride did not object to any of these questions or to the answers given by the witness, nor did he request a mistrial.

Mr. Van Volkenburgh also read portions of the testimony from Mr. McBride's criminal trial during his case-in-chief, without objection from opposing counsel. Specifically, in cross-examination of Mr. Cayton, Chief Criminalist for the Regional Crime Lab in Kansas City, Mr. Van Volkenburgh's attorney asked whether the fact that Mr. McBride contacted his criminal defense attorney prior to giving a statement made him "look liable." Counsel for Mr. McBride did object to this question, and it was withdrawn. The trial judge then admonished the jury to disregard it. No other action by the court was requested or taken.

During closing argument, Mr. Van Volkenburgh's counsel made several references to the "felonious conduct" and "felonious behavior" exhibited by Mr. McBride, and argued that, if the tables were turned and Mr. Van Volkenburgh had shot Mr. McBride, he "would not even be walking free amongst us today," apparently attempting to imply that Mr. McBride escaped incarceration because he was an attorney. Mr. Van Volkenburgh also intimated that Mr. McBride had been told by his defense attorney to say that he saw Mr. Van Volkenburgh holding a broken beer bottle during the attack so he could claim self-defense. Mr. McBride's counsel, again, did not object to any of these statements.

Mr. Van Volkenburgh presented evidence as to his injuries through his own testimony and through that of Dr. Edward Andres, the emergency room physician who treated Mr. Van Volkenburgh the night he was shot. Mr. Van Volkenburgh testified that, since the shooting, he has suffered from depression and experienced constant pain in his back and stomach, as well as a significantly reduced ability to exercise. He presented evidence of past and present medical costs amounting to $61,055. Mr. McBride did not object to any of this testimony.

During his questioning of Dr. Andres, Mr. Van Volkenburgh asked whether, based upon the doctor's knowledge, there was a "significant possibility" of future physiological problems as a result of the injuries sustained by the gunshot wounds. Mr. McBride objected to the question on the basis that it required the doctor to speculate, and the court sustained the objection. After several attempts to properly formulate the question and several objections, Mr. Van Volkenburgh asked: "Can you state, based on a reasonable degree of medical probability and certainty, if a patient has a significant risk of some residual troubles due to this severe injury he sustained February 20, 1995, Doctor?" Dr. Andres replied:

He has two problems—Well, three—three potential problems. One is that he could have had a—some—he could have some residual decrease in function of his right lung. That might or might not be, and that can be determined on tests and x-rays. He will have a hostile abdomen. And it will be difficult to operate on Mr. Van Volkenburgh again if he has colon cancer or stomach cancer or some—something in the future. He would not be—Nobody could do a laproscopic procedure on him with—with safety, for their—for his gall bladder, for instance, because of all the adheasions and scar tissue. So he has—If he gets an—an aneurysm when he's 70, it will be a big deal to operate on him, to go through this previous scar. That—That is a certainty.

There is a—a greatly increased incidence of—of potential problems like small bowel obstructions. Not everybody who has a major operation is going to have a small bowel obstruction, but the incidence is greatly increased. And the more surgery you do, the greater the risk. So he does run a much increased risk of—of delayed, potentially fatal sequela from this injury.

Mr. McBride did not object to either this question or to the answer given by the doctor.

At the close of the evidence the trial court gave the jury the general damage instruction set out in MAI 4.01, modified to submit future damages:

> If you find in favor of the plaintiff, then you must award plaintiff such a sum as you believe will fairly and justly compensate plaintiff for any damages you believe he sustained *and is reasonably certain to sustain in the future* as a direct result of the occurrence in evidence.

(emphasis added). Mr. McBride objected to this instruction, alleging that Dr. Andres' testimony was "insufficient and inadequate to establish a 'future damage' clause in Instruction 8." The trial court overruled Mr. McBride's objection on the basis that Plaintiff's 40 percent loss of one kidney was prima facie evidence of permanency of injury and future damages.

After deliberations, the jury returned a verdict in favor of Mr. Van Volkenburgh, awarding him $135,000 in compensatory damages. It found for Mr. McBride on Mr. Van Volkenburgh's claim for punitive damages. Mr. McBride's motion for JNOV or a new trial was denied on May 20, 1998. Mr. McBride now appeals to this Court.

## II. IMPROPER COMMENTS IN VIOLATION OF A PRETRIAL RULING

In Mr. McBride's first point, he claims that the trial court abused its discretion in "fail[ing] in its duty to enforce its pretrial orders" regarding the prohibition against mentioning Mr. McBride's

criminal trial. He asserts that it was up to the court to *sua sponte* stop opposing counsel from violating the order, even without an objection from Mr. McBride's attorneys.

We disagree. Trial counsel has a duty to timely object to questionable comments or questions asked by opposing counsel in order to preserve the issue for appellate review. *French v. Missouri Highway and Transportation Com'n,* 908 S.W.2d 146, 152 (Mo.App. W.D.1995). Such objections allow the trial court to take action to avoid undue prejudice. *Id.* By failing to object, the appealing party has deprived the trial court of the opportunity to take corrective action, and, as a result, has forfeited any right to raise the improper argument as an issue on appeal, except as plain error. *Id.*

Plain error review is seldom granted in civil cases. It is proper only if we find that "the error has affected the parties' rights so substantially that a miscarriage of justice or manifest injustice would occur if the error were left uncorrected." *Peterson v. National Carriers, Inc.,* 972 S.W.2d 349, 357 (Mo.App. W.D. 1998), *citing, State v. Silvey,* 894 S.W.2d 662, 671 (Mo. banc 1995); *Robertson v. Cameron Mutual Ins. Co.,* 855 S.W.2d 442, 447 (Mo.App. W.D.1993). It cannot be used to "revive issues already abandoned by selection of trial strategy or by oversight." *French,* 908 S.W.2d at 153. *See Sherpy v. Bilyeu,* 608 S.W.2d 521, 523 (Mo.App. W.D.1980). "A party cannot play a game of chance by failing to object to the alleged misconduct or trial error and then expect appellate review if the result proves unfavorable." *French,* 908 S.W.2d at 153.

This admonition is particularly applicable here. Mr. McBride's counsel not only failed to object in a timely fashion to the statements as they were made, but, after conferring with his client about the matter, he specifically declined the court's offer of remedial action during voir dire. Thus,

when Mr. Van Volkenburgh finished his opening statement without objection from Mr. McBride, the court, of its own volition, stated:

> Now, you violated that pretrial order, and *I'm going to offer to the Defendant a mistrial at this time if you ask for it.* If you do not request a mistrial, why, we'll proceed and I will . . . also admonish the jury if you request it, but I will not do that on my own hook, because it may be a proper strategy of counsel not to emphasize what was done by further admonishment.

(emphasis added). Mr. McBride declined the court's offer to grant a mistrial or to admonish the jury. The trial judge reiterated that he would tolerate no more violations of the pretrial order, and that if Mr. Van Volkenburgh did so again, the judge would sustain a defense motion for a mistrial. On only a single occasion either during the trial or during closing arguments did Mr. McBride even object to one of Mr. Van Volkenburgh's statements of this nature, however, and that objection was sustained. No further relief was requested.

The first time Mr. McBride made a request for a mistrial was after the jury verdict, when he filed his motion for new trial. Mr. McBride suggested at oral argument that this request was timely, because the judge had said during voir dire he would grant a mistrial if Defendant requested it if further references to the criminal trial were made, and the judge never said that the request had to come before the jury reached its verdict. Mr. McBride's counsel suggests that he reasonably believed he could request and be granted a mistrial, even after trial.

■ This interpretation of the judge's remark about a mistrial is patently unreasonable. The judge did not give defense counsel a license to "save up" all references to the criminal charges and promise to grant a mistrial based on them if the verdict proved to be unfavorable. Indeed, a mistrial cannot be granted after trial. *See, e.g., Duckett v. Troester,* 996 S.W.2d

641 (Mo.App. W.D.1999). At that point, the proper remedy is a motion for new trial. Such a motion is inadequate to preserve issues not properly objected to at trial, however. *Stone v. City of Columbia,* 885 S.W.2d 744, 747 (Mo.App. W.D.1994). Mr. McBride had no right to consciously 'roll the dice' and see whether he would be acquitted before requesting a mistrial. Defendant's request for mistrial, made only after the jury returned its verdict, was untimely. *State v. Shelton,* 779 S.W.2d 614, 617 (Mo.App. E.D.1989). Point denied.

## III. JURY INSTRUCTIONS

■ In his second point, Mr. McBride claims that the trial court erred by instructing the jury on future damages because this instruction was not supported by substantial and competent evidence, and because it misdirected, misled, or confused the jury. In support of this point, Mr. McBride states that Dr. Andres' responses to the questions regarding Mr. Van Volkenburgh's future problems were unduly speculative and did not support a future damage instruction. We agree that Dr. Andres' testimony, considered alone, did not support the submission of future damages. He testified, rather, about certain of Mr. Van Volkenburgh's present injuries, such as a 40 percent loss of a kidney, loss of part of his small intestines, and internal scarring. He further testified that these problems gave Mr. Van Volkenburgh an increased risk of a future problem should he need surgery at some future point. As Defendant notes, however, the latter testimony is too speculative to support recovery of damages for the future surgery itself.

■ Here, however, in order to show error in submitting future damages, Defendant must show not just that Dr. Andres' testimony was inadequate to support future damages, but that there was no other substantial evidence to support a future damages submission. This is a burden he cannot meet.

To reverse a jury verdict on grounds of instructional error, appellant must show that: 1) the instruction as submitted misled, misdirected, or confused the jury, and 2) prejudice resulted from the instruction. *Cornell v. Texaco, Inc.*, 712 S.W.2d 680, 682 (Mo. banc 1986); *Judy v. Arkansas Log Homes, Inc.*, 923 S.W.2d 409, 420 (Mo.App. W.D.1996). The burden of proof rests with the party alleging the error. *Cornell*, 712 S.W.2d at 682.

Of course, "[i]n determining whether there was substantial evidence to support the giving of a particular instruction, we view the evidence in the light most favorable to the party tendering the instruction." *Porter v. Bi–State Development Agency*, 710 S.W.2d 435, 437 (Mo. App. E.D.1986). Moreover, it is well recognized that "[l]ong continuance of conditions existing at trial is sufficient to warrant giving an instruction on damages for future pain and suffering," *Id.*, and, in fact, evidence to support such an instruction "may come solely from the plaintiff and need not be corroborated by medical evidence...." *Hobbs v. Harken*, 969 S.W.2d 318, 324 (Mo.App. W.D.1998); *McPherson v. Bi–State Development Agency*, 702 S.W.2d 129, 132 (Mo.App. E.D.1985).

In this case, Mr. Van Volkenburgh testified that, as a result of the permanent injuries he sustained in the shooting, he suffers constant pain in his back and stomach, and that no treatment has been able to relieve his pain. He also testified that his ability to be physically active has diminished substantially since the shooting, and that he had no significant health problems prior to the shooting. This testimony specifies both ongoing damages and a causal connection between the damages and the accident. This testimony is sufficient to support the submission of future damages under *Harken* and *McPherson*, cited above. Point denied.

For the reasons stated above, the judgment is affirmed.

Judge HAROLD L. LOWENSTEIN and Judge ALBERT A. RIEDERER, concur.