In the Matter of Elsie Verlene
**SWEARINGEN, Plaintiff,**

**Delores Jean Goodson, Appellant,**

v.

**Gary Dryden, John Vohs, Respondents.**

**Robert Dryden, Defendant.**

**No. WD 57929.**

Missouri Court of Appeals,
Western District.

Feb. 6, 2001.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 27, 2001.

Application to Transfer Denied
May 29, 2001.

Howard D. Lay, Kansas City, for appellant.

Robert Edward Murphy, St. Joseph, for respondent Gary Dryden.

John Lawrence Vohs, Savannah, for respondent John L. Vohs.

Before Presiding Judge SMART, Judge ELLIS and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Appellant Delores Jean Goodson filed a Petition to Discover Assets in a joint account that her mother, Elsie Verlene Swearingen, holds with Ms. Goodson's son, Respondent Gary Dryden. The probate court granted the motion to dismiss filed by Mr. Dryden and Respondent John Vohs, who is Ms. Swearingen's conservator, finding that Ms. Goodson lacked standing to bring a petition for discovery of assets. It also authorized Mr. Vohs, as conservator, to pay attorney's fees and expenses incurred by Mr. Dryden in defending the joint account, and denied her motion to terminate the conservatorship. Ms. Goodson appeals individually and on behalf of Ms. Swearingen. Because we find that Ms. Goodson did not have standing to bring the petition to discover assets, and that she showed no basis for termination of the conservatorship, we affirm the trial court's judgment dismissing her petition.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In August 1993, Elsie Verlene Swearingen opened an account with A .G. Edwards & Sons in the approximate amount of $400,000. The account agreement created a joint account in the names of Ms. Swearingen and her grandson, Gary Dryden. The agreement provided that Ms. Swearingen and Mr. Dryden held the account as "joint tenants with rights of survivorship and *not* as tenants in common." (emphasis in original). The joint account agreement also stated that Ms. Swearingen and Mr. Dryden appointed each other as her/his agent and attorney-in-fact regarding the joint account:

In consideration of A.G. Edwards & Sons, Inc. (Edwards) maintaining a joint account for the undersigned, [Ms. Swearingen and Mr. Dryden] the undersigned, jointly and severally, appoint each other agent and attorney in fact regarding the joint account; ... to deposit, withdraw and receive payment or delivery of money and other negotiable instruments, securities and other property; to deposit assets of either joint tenant to the joint account; ... and generally to deal with Edwards on behalf of the joint account as fully and completely as necessary, all without notice to the others interested in this account.

Ms. Swearingen was diagnosed with Alzheimer's disease in October 1995, when she was approximately age 75. In November 1995, Ms. Swearingen signed a durable power of attorney making Ms. Goodson, Ms. Swearingen's only living child, her attorney-in-fact. In January 1997, Ms. Goodson filed a lawsuit on behalf of Ms. Swearingen, in the Circuit Court of Buchanan County, Missouri, against Mr. Dryden and A.G. Edwards, seeking to establish that, as attorney-in-fact for her mother, she had the right to withdraw funds from the joint account Ms. Swearingen had with Mr. Dryden.

While the latter case was still pending, on April 28, 1998, Ms. Goodson filed a petition asking that she be appointed as guardian and conservator for her mother because her mother was unable by reason of mental incompetence to care for her daily needs or to manage her business affairs. In August 1998, the Probate Division of the Circuit Court of Holt County, Missouri, entered its Judgment of Total Incapacity and Total Disability for Ms. Swearingen. The court appointed Ms.

Goodson as guardian of her mother's person, but declined to appoint her as conservator for her mother, finding that if Ms. Goodson were appointed conservator of the estate, she "would have a clear conflict of interest, as she seeks access to the account for the sole purpose of inheriting a portion thereof herself."

In support of its ruling, the court found that Ms. Goodson had sought access to the A.G. Edwards' account assets so that she could not only control and distribute them, but also so that she could receive a portion of the assets upon Ms. Swearingen's death. The court found that the facts established that Ms. Goodson expended her mother's funds on attorney's fees in order to pursue her own suit to control the assets of the estate. The court also found that, in her capacity as attorney-in-fact, Ms. Goodson had purchased two annuities from her husband's business with her mother's money, in the sums of $30,000 and $25,000, that Ms. Goodson's husband received more than $3,000 in commissions for selling the annuities, and that Ms. Goodson was the primary beneficiary of the annuities. These facts caused the court to find that Ms. Goodson had a conflict of interest with her mother regarding the funds in the joint account. For this reason, the court appointed Respondent John Vohs, Ms. Swearingen's attorney, as conservator of Ms. Swearingen's estate.

On May 13, 1999, Ms. Goodson filed the Petition to Discover Assets that is the subject of this appeal, naming as defendants Mr. Dryden (the joint tenant of the account) and Mr. Vohs (the conservator). Ms. Goodson brought the petition in three capacities-as attorney-in-fact for her mother, as her mother's guardian, and individually. At the hearing on the petition, Ms. Goodson sought not only to discover assets, but also to terminate the conservatorship so that she could obtain control over Ms. Swearingen's estate in her capacities as Ms. Swearingen's daughter, guardian, and attorney-in-fact. Mr. Vohs opposed Ms. Goodson's petition on the basis that there was no allegation that the monies held in the A.G. Edwards account were presently needed for the care, maintenance, or use of Ms. Swearingen; that Ms. Goodson had admitted on numerous occasions that she intended to remove the funds from the A.G. Edwards account for her own purposes; and, in particular, that her purpose in bringing the action was to get the funds out of the account so that they would not be subject to Mr. Dryden's rights as joint tenant of the account with right of survivorship. That way, the funds would be part of the estate which she would inherit when her mother died.

On October 25, 1999, the Probate Court entered its Judgment and Order granting Mr. Dryden's and Mr. Vohs' motions to dismiss Ms. Goodson's Petition to Discover Assets. The court held that Ms. Goodson lacked standing to bring the action either as Ms. Swearingen's guardian, attorney-in-fact, or individually. The court also authorized Mr. Vohs, as conservator, to pay attorney's fees and expenses incurred by Mr. Dryden in defending the joint account, in the amount of $41,166.18, and refused to terminate the conservatorship. Ms. Goodson now appeals.

## II. STANDARD OF REVIEW

 When reviewing a trial court's grant of a motion to dismiss "we engage in an essentially de novo review of an issue of law." *Jordan v. Willens*, 937 S.W.2d 291, 293 (Mo.App. W.D.1996). *See Summitt by Boyd v. Roberts*, 903 S.W.2d 631, 633 (Mo. App. W.D.1995). We assume as true all of the plaintiff's averments and all reasonable inferences therefrom "treating all facts alleged as true and construing the allegations favorably to the plaintiff." *Jordan*, 937 S.W.2d at 293; *Consolidated Finan-*

*cial Investments, Inc. v. Manion*, 948 S.W.2d 222, 223 (Mo.App. E.D.1997). We make no attempt to reweigh the credibility or persuasiveness of the facts alleged. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 306 (Mo. banc 1993). Rather, we review the petition to determine whether it invokes principles of substantive law and whether the facts alleged, if proven, would entitle the plaintiff to relief. *Jordan*, 937 S.W.2d at 293; *Carr v. Anding*, 793 S.W.2d 148, 149 (Mo.App. E.D.1990).

■ Where a point has not been properly preserved, we review only for plain error under Rule 84.13. Plain error review is proper in civil cases only if we find that "the error has affected the parties' rights so substantially that a miscarriage of justice or manifest injustice would occur if the error were left uncorrected." *Peterson v. National Carriers, Inc.*, 972 S.W.2d 349, 357 (Mo.App. W.D.1998), citing, *State v. Silvey*, 894 S.W.2d 662, 671 (Mo. banc 1995); *Robertson v. Cameron Mutual Ins. Co.*, 855 S.W.2d 442, 447 (Mo. App. W.D.1993). It cannot be used to "revive issues already abandoned by selection of trial strategy or by oversight." *French v. Missouri Highway and Transportation Comm'n.*, 908 S.W.2d 146, 153 (Mo.App. W.D.1995). *See also Van Volkenburgh v. McBride*, 2 S.W.3d 814, 819 (Mo.App. W.D.1999); *Sherpy v. Bilyeu*, 608 S.W.2d 521, 523 (Mo.App. W.D.1980). A party cannot play a game of chance by failing to object "to the alleged misconduct or trial error and then expect appellate review if the result proves unfavorable." *Van Volkenburgh*, 2 S.W.3d at 819, *citing, French*, 908 S.W.2d at 153.

## III. MS. GOODSON DOES NOT HAVE STANDING TO BRING THIS ACTION

The primary issue on appeal is whether the lower court erred in holding that Ms. Goodson did not have standing to bring this petition for discovery of assets under Section 475.160 [1], either in her capacity as Ms. Swearingen's attorney-in-fact, in her capacity as Ms. Swearingen's guardian, or individually. That statute provides in relevant part:

Any conservator, protectee, creditor or other person, including a person interested in expectancy, reversion or otherwise, who claims an interest in property which is claimed to be an asset of the estate of a protectee or which is claimed should be an asset of such an estate, may file a verified petition in any court having jurisdiction of such estate seeking determination of the title and right of possession thereto.

Sec. 475.160. Mr. Dryden and Mr. Vohs contended below, and the court found, that on the particular facts of this case, Ms. Goodson did not have standing because she has no legally protectible interest in her mother's joint account in any of these capacities For the reasons discussed below, we agree and affirm the judgment.

### A. Inadequacy of Point Relied On Regarding Standing

■ In her first Point Relied On, Ms. Goodson appears to argue that she has standing to bring suit, but it is unclear exactly what she alleges is the basis for such standing, for the majority of the point sets out complaints about the conservator's and the court's handling of her suit to obtain the right to withdraw funds from the joint account, rather than addressing her standing to bring the instant suit. Point I states in full as follows:

THE COURT ERRED BY SUSTAINING THE MOTION TO DIS-

---

**1.** All statutory references are to RSMo 1994, unless otherwise specified.

MISS FILED BY GARY DRYDEN AND JOHN L. VOHS BECAUSE THE PROTECTEE AND OTHER PERSONS ARE AUTHORIZED, UNDER SECTION 475.160 RSMo TO MAKE CLAIMS TO PROPERTY; AND BECAUSE THE PLEADINGS AND FACTS OF RECORD DEMONSTRATE THAT APPELLANTS HAVE SUCCESSFULLY STATED THE COURT HAS REFUSED IN ERROR TO CONSIDER THE PAST EFFORTS, PRIOR TO THE CONSERVATORSHIP, BY MRS. SWEARINGEN AND HER POWER OF ATTORNEY TO WITHDRAW FUNDS; AND THE REFUSAL BY AGE TO ALLOW WITHDRAWAL; THE BUCHANAN COUNTY LAWSUIT PRIOR TO THE CONSERVATORSHIP TO GET THE FUNDS' AND THE AGE [A.G. Edwards] VOLUNTARY TERMINATION OF THE ACCOUNT BY THEIR COUNTERCLAIMS IN THE BUCHANAN COUNTY CIRCUIT COURT WHICH ARE ALL EVENTS AND FACTS THAT ENTITLE THE PROTECTEE AND HER HEIRS TO RELY ON A PRIMA FACIE CLAIM TO THE AGE ACCOUNT, WHERE THE CONSERVATOR HAS TAKEN A POSITION ADVERSE TO THE BEST INTEREST OF THE PROTECTEE'S RIGHT TO CONTROL HER OWN FUNDS. THE TRIAL COURT REFUSED BUT MUST ACCEPT AS TRUE ALL ALLEGATIONS IN THE VERIFIED PETITION AND THE VERIFIED MOTION FOR SUMMARY JUDGMENT, AFFIDAVITS AND SWORN TESTIMONY BECAUSE THEY WERE UNOPPOSED BY ANY AFFIDAVITS OR EVIDENCE FROM DEFENDANTS.

While this point is lengthy, it fails to set out wherein and why the court erred in finding that Ms. Goodson did not have standing, and it clearly is not adequate to preserve Ms. Goodson's claim that she has standing to sue in her capacity as guardian or attorney-in-fact for Ms. Swearingen, or individually. In fact, it does not ever use the word "standing." Liberally construed, the most it can be read to assert by stating "the protectee and others are authorized, under Section 475.160 R.S.Mo. to make claims to property," is that Ms. Swearingen has the right to bring this action. However, the lengthy point neither sets out why Section 475.160 gives Ms. Goodson the right to bring this claim on behalf of the protectee, Ms. Swearingen, nor addresses who the "others" to bring such a suit are. While the point does set forth in detail other alleged conflicts of interest and wrongs by A.G. Edwards and by Mr. Dryden and the trial court, it does not explain how these relate to the standing argument, and, in fact, they do not.

 Rule 84.04 requires that where an appellant files a brief with the appellate court, each point relied on must:

 a) identify the trial court ruling or action that the appellant challenges;

 b) state concisely the legal reasons for the appellant's claim of reversible error; and

 c) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

Rule 84.04(d)(1). A point relied on which "does not state 'wherein and why' the trial court erred does not comply with Rule 84.04(d) and preserves nothing for appellate review." *Smith v. Independence Tax Increment Finance Comm'n*, 919 S.W.2d 292, 294 (Mo.App. W.D.1996); *In re Marriage of Kempf*, 825 S.W.2d 667, 668 (Mo. App. S.D.1992). The requirement that "the point relied on clearly state the contention on appeal is not simply a judicial

word game or a matter of hypertechnicality on the part of appellate courts. It is rooted in sound policy." *Thummel v. King,* 570 S.W.2d 679, 686 (Mo. banc 1978). The function of this rule is to give notice to the opposing party of the precise matters that must be contended with and to inform the court of the issues presented for review. *Nichols v. Mama Stuffeati's,* 965 S.W.2d 171, 177 n. 1 (Mo.App. W.D.1997). Moreover, grouping multiple contentions not related to a single issue violates Rule 84.04. *Smith,* 919 S.W.2d at 294.

In *Thummel,* the Missouri Supreme Court addressed the reason why Rule 84.04 requires clarity in points relied on:

> ... [S]uch notice is essential to inform the court of the issues presented for resolution. Clear statement of the points relied on facilitates full advocacy and affords the opportunity for clarification by meaningful questions directed to the issues stated in the points relied on. If the appellate court is left to search the argument portion of the brief (or even worse, to search the record on appeal) to determine and clarify the nature of the contentions asserted, much more is at stake than a waste of judicial time (even though in this time of increased litigation and heavy caseloads, that alone is sufficient justification for the rules). The more invidious problem is that the court may interpret the thrust of the contention differently than does the opponent or differently than was intended by the party asserting the contention. If that happens, the appellate process has failed in its primary objective of resolving issues raised and relied on in an appeal.

570 S.W.2d at 686.

In the case at bar, the argument section of Point I is also difficult to follow, at times denying that Ms. Goodson is asserting standing individually to bring suit, while at other times suggesting that she does have such a right. We nonetheless choose to exercise our discretion to review the arguments which are made in Point I to determine whether plain error occurred under Rule 84.13, which provides that, "plain errors affecting substantial rights may be considered on appeal, in the discretion of the court, though not raised or preserved, when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Rule 84.13(c). We find no such error in regard to the standing issue.

*B. Standing to Sue as the Protectee's Guardian*

Ms. Goodson states in the argument section of Point I that she is not suing on her own behalf, but rather that the protectee that is, Ms. Swearingen is suing personally. Ms. Swearingen is not personally a party to this case, however. She has Alzheimers disease and has been declared incompetent. It is Ms. Goodson, not Ms. Swearingen, who filed the action below and who has filed this appeal, on her own behalf and on behalf of Ms. Swearingen as her guardian.

Since Ms. Goodson did file the suit below in her capacity as guardian of Ms. Swearingen, for purposes of the present discussion we will presume that Ms. Goodson is intending to assert that Section 475.160 gives her standing in her capacity as guardian of Ms. Swearingen to bring this suit on her mother's behalf to discover the extent of her mother's interest in the joint account. As noted above, Section 475.160 states in relevant part that:

> Any conservator, protectee, creditor or other person, including a person interested in expectancy, reversion or otherwise, *who claims an interest in property* ... may file a verified petition ...

Sec. 475.160 (emphasis added).

As is evident, the statute does not specifically list a guardian as a person who

may bring a petition to discover assets, and Ms. Goodson cites no authority for the proposition that a guardian has the right to claim an interest in her protectee's property where, as here, a conservator has been appointed. Rather, as Mr. Dryden and Mr. Vohs note, under Section 475.120.3, a guardian has the power and duty to "take charge of the *person* of the ward and to provide for the ward's care, treatment, habilitation, education, support and maintenance." Sec. 475.120.3 Cum. Supp.1997 (emphasis added). The guardian is not given authority to take charge of the person's assets or to sue or be sued on behalf of the ward, however. That power is specifically delegated to the conservator, who is the person "appointed by the court to have the care and custody of the estate of a … disabled person." Sec. 475.010.3. The primary purpose "of a conservatorship is to provide financial assistance to a person who is 'unable by reason of some specific physical or mental condition to receive and evaluate information or to communicate decisions to such an extent that the respondent lacks ability to manage his financial resources.'" *Estate of Ewing v. Bryan,* 883 S.W.2d 545, 548 (Mo. App. W.D.1994), *quoting,* Sec. 475.061.1 RSMo 1986. The conservator also has the power to "prosecute and defend all actions instituted in behalf of or against the protectee." Sec. 475.130.4 RSMo Cum.Supp. 1998. This, necessarily, includes the power to bring a petition to discover assets.

Ms. Goodson counters that, even though a conservator has many financial powers, under *Matter of the Estate of Thompson v. Stroud,* 539 S.W.2d 650 (Mo.App.1976), a guardian retains the same right to terminate or withdraw funds as the ward, and thus has concurrent standing to file a petition to discover assets in a joint account. *Thompson* did hold that when one of the joint tenants of an account becomes incompetent, the joint tenancy is not terminated and the guardian of the joint tenant "has the unconditioned and unlimited power to withdraw or pledge the account on behalf of the incompetent." *Id.* at 652. *Thompson* was decided under Section 369.174 RSMo Cum.Supp.1973, however.

Section 369.174 was revised in 1983 so as to delete the phrase stating that a guardian could withdraw funds. The legislature instead provided that "any withdrawal or pledge on behalf of the disabled joint owner shall be by his *conservator.*" Sec. 369.174.3 RSMo 1983 (emphasis added). That change is still in effect today. Sec. 369.174.3 RSMo 1994. As Mr. Dryden notes, no doubt for this reason the Committee Comment to Section 475.322 states *Thompson* is no longer good law. 4B John A. Borron, Jr., *Missouri Practice, Probate and Surrogate Laws Manual,* Ch. 475, Guardianship, at 225 (1995). We agree.

Consistent with the change in Section 369.174, Section 475.322, as enacted in 1983 and as in effect today, also provides that the *conservator* of a protectee who owns real or personal property in joint tenancy or tenancy by the entirety or who has deposited funds in a joint account in his name and in the name of any other person may, with the authorization or approval of the court:

> [R]edeem such bonds, withdraw funds from such account, and sell, exchange or mortgage the protectee's estate or interest in such joint … property, to the extent that funds are needed to pay expenses under section 475.125 or claims under section 475.211. With respect to property held in joint tenancy, the provisions of sections 362.470 and 369.174, RSMo, shall be applicable …

Sec. 475.322(3) RSMo 1994. These statutes are consistent with the general statutory scheme set out in Section 475.120 RSMo. Cum.Supp.1997 and 475.130 RSMo

Cum.Supp.1998 giving the guardian power over the protectee's person and the conservator power over the protectee's financial affairs.

Under these statutes, where, as here, a conservator and a guardian have been appointed and the conservator has been given authority over the protectee's estate, the guardian is not authorized under Section 475.160 to bring a petition to discover assets such as this. It is the *conservator* who has that power. Of course, as discussed in Section IV below, should the conservator improperly refuse to so act, then the guardian could petition the court for removal of the conservator and appointment of a new conservator. Such relief has not been requested here, however. In any event, the court below gave Mr. Vohs, not Ms. Goodson, the power, as conservator, to sue and be sued on behalf of Ms. Swearingen, and to handle her financial affairs. Neither the judgment appointing her as guardian nor the statute give Ms. Goodson power to bring the petition in her capacity as guardian.

### C. Standing as Attorney–in–Fact

▮ In the argument section of Point I of her brief, Ms. Goodson also notes that she is her mother's attorney-in-fact, and she appears to argue that this gives her the right to bring this petition for discovery of her mother's assets relating to her mother's joint account with Mr. Dryden, despite the court's appointment of Mr. Vohs as conservator, and the court's refusal to appoint her as conservator. As this argument was not properly preserved in Point Relied On I, it is also not preserved for review. *See* Rule 84.04. We have nonetheless reviewed the argument to see whether the court below committed plain error in failing to find that Ms. Goodson had standing to sue in her capacity as her mother's attorney-in-fact, and we find no plain error occurred.

*Ewing* is helpful in analyzing this claim. It held that, under Section 404.731.3:

When a principal has appointed an attorney in fact under a durable power of attorney and the court subsequently appoints a conservator, 'after notice and hearing, the court may specify in an order the powers, duties and responsibilities of the principal's legal representative and any attorney in fact appointed under a durable power of attorney and the manner in which they shall coordinate the exercise of their respective powers and duties for and on behalf of the principal.'

883 S.W.2d at 550 n. 1, *quoting* Sec. 404.731.3. In the case at bar, Ms. Swearingen appointed Ms. Goodson as her attorney-in-fact under a durable power of attorney signed in the fall of 1995. On August 10, 1998, the court appointed Mr. Vohs as conservator. The court specified in the order that Mr. Vohs was to be the *conservator* of the *estate*, while Ms. Goodson became the *guardian* of Ms. Swearingen's *person.*

While the court could have provided that Ms. Goodson as attorney-in-fact retained power over the estate and had the right to sue or be sued on behalf of the estate, or to handle her mother's financial affairs, it did not do so. To the contrary, it found that Ms. Goodson had a conflict of interest which precluded her from being qualified to handle her mother's financial affairs, and it specifically stated that for this reason it did not give Ms. Goodson power as conservator of her mother's estate but instead appointed Mr. Vohs to that role "with power and authority over all of [Ms. Swearingen's] assets as set forth in Section 475.130." The court specifically stated that Ms. Goodson was only found to be "a suitable and qualified person to serve as guardian of the person for [Ms. Swearingen], with all powers set forth in Section

475.120." The powers of a conservator versus a guardian have been discussed above, and will not be repeated here. By making Mr. Vohs conservator, and specifically limiting Ms. Goodson to the role of guardian, the order implicitly revoked any authority Ms. Goodson previously had to handle her mother's financial affairs as her attorney-in-fact.

*D. Standing "Individually" to Sue for Discovery of Assets*

■ Finally, we note that it is unclear whether Ms. Goodson is arguing that she has standing individually to bring the petition for discovery of her mother's assets in the joint account. At one point in the argument portion of Point I, she specifically states that the court below erred in concluding that the case below was brought by Ms. Goodson individually, and insists that it is being brought by the protectee, Ms. Swearingen, individually. At another point, however, she states that, "In this case the Power of Attorney/Guardian/Sole Heir has the requisite interest to assert a claim on her own behalf, and on behalf of the protectee, since the conservator refuses to do so." The only case she cites in apparent support of this argument is *Brown v. Kirkham,* 926 S.W.2d 197 (Mo.App. W.D.1996), and she nowhere explains why the language she relies on in it concerning the rights of a devisee applies to the very different factual situation now before us. In light of the failure to develop this argument as required by Rule 84.04, we decline to reach the issue whether the trial court erred in finding Ms. Goodson did not have standing in her capacity as her mother's heir-at-law

to bring this discovery of assets proceeding.

## IV. TERMINATION OF CONSERVATORSHIP

■ Ms. Goodson states in Point Relied On II that:

> THE COURT ERRED BY REFUSING TO SUSTAIN THE UNOPPOSED VERIFIED MOTION AND AFFIDAVIT TO TERMINATE THE CONSERVATORSHIP BECAUSE CONSERVATORSHIP IS NOT REQUIRED; IS NOT IN THE BEST INTEREST OF THE PROTECTEE, AND THE CONSERVATOR HAS A CONFLICT OF INTEREST AND IS ACTING AGAINST THE BEST INTEREST OF THE PROTECTEE BY HIS CONSTANT REFUSAL TO SUPPORT THE PROTECTEE'S EFFORTS TO GET EXCLUSIVE CONTROL OF THE ESTATE ASSETS; FURTHER, BECAUSE THE GENERAL RULE OF LAW WOULD HONOR THE APPOINTMENT OF THE DAUGHTER AND POWER OF ATTORNEY AS CONSERVATOR WHERE SHE WAS SELECTED AND NAMED BY THE PROTECTEE WELL AHEAD OF THE PROCEEDINGS FOR INCOMPETENCY AND BECAUSE THE GUARDIAN/DURABLE POWER OF ATTORNEY OFFERED TO RESTRICT ALL FUNDS TO AVOID BOND COSTS, ATTORNEY FEES AND CONFLICT BY THE NAME CONSERVATOR. THE COURT HEARD NO EVIDENCE AND THE VERIFIED MOTION WAS UNOPPOSED SO SHOULD NOT HAVE BEEN DENIED SUMMARILY.

This point basically alleges that the trial court erred in not terminating the conservatorship, because Mr. Vohs has a conflict of interest, is doing a bad job, and because Ms. Goodson would be a better conservator anyway since she is a close relative. While Ms. Goodson is correct that a conservator should not serve with a conflict of interest,[2] the remedy for such a situation is

---

2. While Ms. Goodson also argues that Mr. Vohs has an obvious conflict of interest, she does not specify what that alleged conflict of interest is, except to assert that Mr. Vohs is "attempting to defeat the Protectee's efforts to control the ... account." To the extent that

she means that he is exercising his judgment as conservator rather than follow Ms. Swearingen's requests, it is unclear why this is error where, as here, Ms. Swearingen has been found to be incompetent due to Alzheimer's

not to terminate the conservatorship. Rather, Section 475.097(1) provides for removal of the conservator, if the conservator is not effectively performing his or her duties and for suspension of his authority and appointment of a conservator ad litem until removal can be accomplished. Section 475.097(2) similarly provides for the appointment of a conservator ad litem if the conservator has a conflict of interest.

Ms. Goodson did not petition the court to remove Mr. Vohs or to appoint a conservator ad litem for Ms. Swearingen. Rather, she asked the court to terminate the conservatorship. The court did not err in denying this relief. While Ms. Goodson does maintain in the argument section of her Point that the conservatorship is not necessary because she can take care of her mother's financial needs and save conservator fees, the court approved such fees, and specifically found that Ms. Goodson had a conflict of interest which rendered her unqualified to handle her mother's financial affairs. For these reasons, we reject Point II.

## V. OTHER ARGUMENTS

■ In her remaining arguments on appeal, Ms. Goodson claims that the trial court erred in granting attorney's fees to counsel for Mr. Dryden in the amount of $41,166.18, to compensate him for his expenses in defending the joint account here and from Ms. Goodson's attempt in her 1997 suit in Buchanan County to obtain control over the account. In its order granting attorney's fees, the court stated:

Both in this matter and the ... [case] in the Circuit Court of Buchanan County, Missouri, it is true that Gary Dryden was forced to hire attorneys to basically defend the status quo of the A.G. Edwards & Sons, Inc. joint account of the protectee and Mr. Dryden, in effect pre-

serving the estate plan of the protectee.... [Ms.] Goodson has, at the same time, sought to destroy the estate plan of the protectee for her own benefit, and at least in part, has expended money of the protectee for attorney fees of [Ms.] Goodson in pursing that end.

The court found that Mr. Dryden's expenditure on attorney's fees to protect the assets in the joint account from Ms. Goodson benefited the estate and that reimbursement of the fees was proper. Because we have found that Ms. Goodson has no interest in the joint account or standing to handle her mother's financial affairs or to appeal the court's ruling below, she also has no standing to raise this issue, and she has no standing to appeal this ruling. For the same reason she has no standing to raise the issue whether the court improperly considered the joint account to be part of Ms. Swearingen's "estate plan."

■ Finally, Ms. Goodson also argues that the trial court erred in failing to grant her motion for summary judgment filed in June 1999, since, she says, defendants failed to specifically deny certain of her averments, and the trial court therefore was required to "accept as true all allegations in the Motion for Summary Judgment, affidavits and sworn testimony, because they were unopposed by any affidavits or evidence from defendants." We disagree that Ms. Goodson is entitled to relief on this basis. Most basically, denial of a motion for summary judgment is not appealable. *Porter v. Reardon Machine Co.*, 962 S.W.2d 932, 941 n. 1 (Mo.App. W.D.1998); *Farmers Insurance Co. v. McFarland*, 976 S.W.2d 559, 566 (Mo.App. W.D.1998); *Gilmore v. Erb*, 900 S.W.2d 669, 671 (Mo.App. E.D.1995); *Hammer v. Waterhouse*, 895 S.W.2d 95, 99 (Mo.App. W.D.1995).

disease. She is in no position to direct the

disposition of her property.

Even were the ruling appealable, defendants did controvert the specific factual allegations of Ms. Goodson's motion to the extent that they were set out with particularity in separately numbered paragraphs, as required by Rule 74.04(c)(1). Ms. Goodson complains only that the defendants failed to specifically controvert her statement in paragraph (1) of her motion that her motion incorporated by reference her suggestions, exhibits and affidavits. She argues that since defendants did not specifically state that they denied each of the averments contained in the incorporated suggestions, exhibits and affidavits, defendants thereby admitted that everything set out in those documents was true. This argument is frivolous. Paragraph (1) did not set out any specific fact for defendants to deny. It merely stated that the movant was incorporating certain other documents. Unless the responding party wanted to contest that these documents were indeed attached to the motion, there was nothing to deny. The paragraph did not set out any specific fact with particularity, and thus no responsive denial was called for as to that paragraph.

For all of the above reasons, we hold that the trial court did not err in dismissing Ms. Goodson's Petition for Discovery of Assets on behalf of her mother, and we affirm.

SMART, P.J. and ELLIS, J., concur.