Elgie L. LONG, Sr., et al., Appellants,

v.

**CROSS REPORTING SERVICE, INC., et al., Defendants,**

**Funeral Directors Service, Inc.; Carol Franke Walsh; and William Stephen Nixon, Respondents.**

No. WD 61272.

Missouri Court of Appeals, Western District.

Feb. 25, 2003.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 1, 2003.

Application for Transfer Denied May 27, 2003.

Dennis J. Campbell Owens, Albert W.L. Moore, Jr., Kansas City, MO, for Appellants.

Kendall Paul Day, Kansas City, MO, for William Stephen Nixon.

Carol F. Walsh, Kansas City, MO, for Carol Walsh and Funeral Directors Service.

Before: THOMAS H. NEWTON, P.J., ROBERT G. ULRICH and EDWIN H. SMITH, JJ.

THOMAS H. NEWTON, Presiding Judge.

The Long Family ("appellants") seeks a review of the trial court's judgment, which

dismissed their petition and awarded sanctions against their attorney.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The underlying Petition, upon which the instant matter is based, is a suit initiated by appellants in 1997 seeking damages for the loss of a watch owned by Garold Long, deceased. That Petition alleged that Funeral Directors Service, Inc., Kansas City Funeral Directors, Inc., and Thaddeus Lee Rogers ("Respondents") were liable for the loss of this watch because it was lost while respondents had the care of Garold Long's body preparing for his funeral. This lawsuit was brought on behalf of appellants by two attorneys ("lead counsel" and "secondary counsel") who practice in the Kansas City area.

The merits of this case were never heard, however, because the trial court dismissed the Petition with prejudice. That dismissal was appealed before this Court, and we affirmed the trial court's dismissal of the Petition. *See Long v. Funeral Dirs. Serv., Inc.*, 96 S.W.3d 885 (Mo.App.W.D.2002).

During the pre-trial stages of that lawsuit, a discovery dispute arose that led to the new petition. This dispute involved the medical history of the deceased and was related to the deceased's HIV status (which still remains an unresolved question to this day). The Honorable W. Stephen Nixon ruled against appellants on that issue. In this Petition, it was alleged that the Jackson County Circuit Court (Division 5), the Honorable W. Stephen Nixon presiding, "failed and refused to enforce §§ 191.656[1] and 196.657 of the Revised Statutes of Missouri [that pertain to the disclosure of medical records regarding an individual's HIV status], the Missouri discovery rules and the Constitutions of Missouri and the United States of America." Accordingly, this suit sought an injunction and damages against Judge Nixon. This suit also named a host of other parties including the following: Cross Reporting Service, Inc.; William V. Denton; Poe & Company Electronic Reporting; Funeral Directors Service, Inc.; Thaddeus Lee Rogers; Kansas City Funeral Directors, Inc.; Carol Frankie Walsh, Esq.; Sue Langston–Ames; Rhonda S. Loepke, Esq.; and Ivra Cross.

Respondents filed individual motions to dismiss the Petition. The trial court dismissed appellants' Petition against Judge Nixon in a written order on November 21, 2001, and found that Judge Nixon was shielded by judicial immunity. Following this ruling, appellants filed a Motion for Dismissal Without Prejudice as to the remaining defendants on January 23, 2002, which was subsequently granted by the trial court.

During this litigation on the pleadings, the respondents filed separate motions for sanctions against appellants' attorneys as listed on the Petition. On December 28, 2001, the trial court issued a written order granting the motion, as it pertained to Carol Franke Walsh and Funeral Directors Service, Inc., for sanctions against the attorneys as listed on the instant Petition. On January 23, 2002, the trial court held an evidentiary hearing on Judge Nixon's motion for sanctions, and, on January 25, 2002, the trial court issued a written order granting this motion for sanctions in favor of Judge Nixon.

On the issue of damages in regard to the sanctions, the trial court set a separate hearing to resolve that dispute. On February 26, 2002, the trial court issued a written judgment awarding sanctions

---

1. Unless otherwise indicated, all statutory citations are to RSMo 2000.

against appellants' lead counsel, in the sum of $14,264.80 to Carol Walsh and Funeral Directors Services, Inc., and $7,188.01 to Judge Nixon. Furthermore, on the basis of the evidence at the hearing, the trial court amended its December 28, 2001, order of sanctions against appellants' secondary counsel. During that evidentiary hearing, it was not disputed that the secondary counsel did not authorize his name on the pleadings. Moreover, lead counsel admitted that he did so without secondary counsel's authorization. Accordingly, the award of sanctions issued by the trial court was amended to reflect liability for attorney's fees against lead counsel only.

This appeal followed.[2]

Appellants bring two points on appeal. In Point I, it is asserted that the trial court erred "in dismissing the claims against the respondents because the appellants stated a valid cause of action in the plain language of the law [that] supports the appellants' claims against respondents." In Point II, it is further argued that the trial court erred "in awarding sanctions against [appellants' attorney], in favor of Judge Nixon, Attorney Walsh, and Funeral Directors Service, Inc., because [the attorney] did not violate Rule 55.03,[3]

in that the plain language of existing law warrants the claims raised by [attorney's] petition, and the appellants' claim for injunctive relief had a cognizable legal basis under § 191.656."

## II. Legal Analysis

■■■ In Point One, appellants argue that the trial court erred in dismissing the Petition. In reviewing the trial court's grant of a motion to dismiss "we engage in an essentially de novo review of an issue of law." *In re Swearingen,* 42 S.W.3d 741, 745 (Mo.App. W.D.2001). We assume all facts alleged are true and construe the allegations favorably to the plaintiff. *Id.* Ultimately, "we review the petition to determine whether it invokes principles of substantive law and whether the facts alleged, if proven, would entitle the plaintiff to relief." *Id.* at 746.

■■■ In actuality, Point I raises the limited question of whether the trial court erred in dismissing the Petition as it relates to Judge Nixon. As previously mentioned, after the trial court ruled that appellants did not bring a viable suit against Judge Nixon, appellants filed a motion voluntarily dismissing the suit as it pertained to the remaining defendants.[4] The trial

---

**2.** It should be noted that this background *section is only* a brief synopsis of the procedural background necessary to decide the current dispute on appeal. Indeed, this represents only a snapshot of what has become, to quote the trial court's February 26, 2002, judgment, "contentious litigation between the parties and their lawyers, involving four divisions of this Court as well as a detour to the federal court, not to mention at least two trips to the Missouri Court of Appeals and one to the Missouri Supreme Court."

**3.** All rule references are to Missouri Rules of Civil Procedure (2002) unless otherwise indicated.

**4.** Accordingly, we must agree with respondents' (Carol Walsh and Funeral Directors Service, Inc.) contention in Point II of their

brief before this Court: "This Court does not have jurisdiction over the Trial Court's Order dismissing the claims against [them] because Appellants filed a Dismissal Without Prejudice as to all remaining defendants in the case, including Carol Frankie Walsh and Funeral Directors Services, Inc., which is not a final judgment and so [is] not appealable." It is fundamental that, unless extraordinary circumstances are alleged, a trial court dismissal without prejudice is not a final judgment and, therefore, is not appealable. *See Osuji v. Mo. Dep't. of Soc. Servs.,* 34 S.W.3d 251, 253 (Mo. App. E.D.2000); *see also Doe v. Visionaire Corp.,* 13 S.W.3d 674, 676 (Mo.App. E.D.2000)("[D]ismissals without prejudice have been held appealable in such cases where the dismissal was based on statutes of limitations, theories of estoppel, a plaintiff's

court dismissed, in its November 21, 2001, order, appellants' petition against Judge Nixon on the basis that "judges acting within their official capacity are immune from civil liability." (citing *Nelson v. McDaniel*, 865 S.W.2d 747, 748 (Mo.App. W.D.1993)). It is true that "[a] judge with subject matter jurisdiction has judicial immunity from all actions taken, even when acting in excess of his jurisdiction." *State ex rel. Raack v. Kohn*, 720 S.W.2d 941, 944 (Mo. banc 1986). "Judicial immunity exists not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, in whose interest it is that the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Id.* (citations and quotations omitted).

█ The basis of appellants' suit against Judge Nixon was that he violated the provisions of §§ 191.656 and 191.657 because he "was unauthorized to order disclosure of this HIV related information," and, therefore, Judge Nixon's judicial immunity had been abrogated by his conduct as a judge. What this "HIV related information," as the appellants call it, consists of is still a mystery to this date. As the trial court states in its judgment, at no time have the appellants alleged that the deceased, Garold Long, was in fact HIV positive. Instead, in their brief before this Court, appellants argue that "[i]n using the phrase 'an individual's HIV infection status,' the Missouri General Assembly's plain language indicates that an individual is protected from disclosure of the fact he or she is positive *or negative*." (emphasis

added). Although we hold reservations as to whether this broad interpretation of the statute is accurate (that those not infected with HIV somehow have a protectable right under the relevant statute), we need not address that issue. Under our standard of review, the sole question presented for review is whether, assuming *arguendo* Judge Nixon somehow misapplied the statute in the pre-trial stages of appellants' suit against the funeral home, that error by Judge Nixon would justify legal action notwithstanding the well developed doctrine of judicial immunity? After reviewing the well-established case law on this issue, we must answer that question in the negative.

█ The United States Supreme Court, in *Pierson v. Ray*, discussed the doctrine of judicial immunity in the following passage:

Few doctrines were more solidly established at common law than the immunity of judges from liability for acts committed within their judicial jurisdiction.... This immunity applies even when the judge is accused of acting maliciously and corruptly.... It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principles

lack of standing, failure of the petition to state a claim where the plaintiff chose not to plead further, failure of a plaintiff in a medical malpractice action to file the health care provider affidavit and the plaintiff's claims not being covered by the statute upon which the petition was based."). Therefore, because appellants allege no extraordinary circum-

stances as to why this voluntary dismissal at their request should be an appealable order, respondents are correct that we do not have jurisdiction to entertain the question of whether the trial court improperly dismissed the Petition as it pertains to them, and, therefore, we will analyze this issue only as it pertains to the suit against Judge Nixon.

and fearless decision-making, but to intimidation.

386 U.S. 547, 553–554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967) (citations and quotations omitted). It cannot be questioned that Missouri courts have embraced these propositions of law wholeheartedly. "So long as a judge does not act wholly without jurisdiction, judicial immunity protects him or her from liability." *Nelson*, 865 S.W.2d at 748 (citing *Raack*, 720 S.W.2d at 941). "When judicial immunity is at issue, jurisdiction is to be construed broadly." *Id.* (citing *Stump v. Sparkman*, 435 U.S. 349, 357, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978)).

At no point in this litigation have the appellants charged that Judge Nixon acted without the force of his jurisdictional power. Quite to the contrary, as the trial court found in its November 21, 2001, order, appellants conceded that any action taken by Judge Nixon was pursuant to his judicial authority. This passage of the trial court's order is as follows:

> [T]he Petition reads that in the above-mentioned suit Judge Nixon 'failed and refused to enforce' various discovery provisions of the Revised Missouri Statutes. That he failed and refused to enforce those rules necessarily assumes that Judge Nixon had the power to do so. It follows [ ] then that Judge Nixon had jurisdiction over [the suit]. According to *Raack*, he, therefore, cannot be held liable for his decisions in that case, regardless of whether or not they were correct.

We concur with this analysis and are perplexed as to how this immunity could have plausibly been abrogated. Appellants spend much time and effort attempting to explain how the discovery statute that they complain of somehow gives them a legal right to sue a judge acting in his official capacity; however, they cite no authority for the proposition that the statute in question (or any statute for that matter) gives an individual such a right. Therefore, Point I is denied because appellants' Petition, taken on its face, failed to allege a viable cause of action, and, therefore, the trial court did not err in dismissing the Petition as it related to Judge Nixon.

■ In Point II, appellants argue that the trial court erred in "awarding sanctions against [appellant's attorney], in favor of Judge Nixon, Attorney Walsh, and Funeral Directors Service, Inc., because [attorney] did not violate Rule 55.03, in that the plain language of existing law warrants the claims raised by [attorney's] petition, and further, the appellants' claim for injunctive relief had a cognizable legal basis under § 191.656. R.S.Mo." The award totaled $14,264.80 for Ms. Walsh and Funeral Directors Service, Inc., and $7,188.01 to Judge Nixon. The standard of review for an award of sanctions is abuse of discretion. *Brown v. Kirkham*, 23 S.W.3d 880, 882 (Mo.App. W.D.2000). "An abuse of discretion occurs when the court's order is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Id.* at 882–83.

■ Rule 55.03(c) permits the trial court to award sanctions against an attorney who files a frivolous action. *See Robin Farms, Inc. v. Beeler*, 991 S.W.2d 182, 186 (Mo.App. W.D.1999) ("We agree that if a party's claims are initiated frivolously or brought in bad faith, the trial court has the discretion to impose sanctions as a deterrent to similar conduct in the future and to recompense the other party."); *see also Noland v. State Farm Mut. Auto. Ins. Co.*, 853 S.W.2d 327, 330 (Mo.App. W.D. 1993)("The sanction of attorney's fees and costs are to compensate the opposing par-

ty the cost of defending against the baseless motion or pleading.").

After reviewing the briefs of the parties on appeal and the relevant case law, we cannot say that the trial court abused its discretion in sanctioning appellants' attorney. On appeal, appellants contend that the trial court abused its discretion in awarding attorneys fees solely on the basis that the Petition had merit. However, as explained in Point I, there should have been no doubt after one studies the relevant case law that such a lawsuit had no basis in law. Appellants' brief states that:

> By imposing sanctions on [appellants' attorney], the court has chilled the appellants' right to enter a court and have their case heard on its merits, as is guaranteed under the Missouri Constitution. This ruling will deter other lawyers from pursuing claims explicitly provided by statutes. This ruling denies the appellants their right to due process of law as provided for in the Fourteenth Amendment to the Constitution of the United States.

We must disagree. In the past several years, this attorney has engaged in what has been referred to as "stealth litigation" for his clients, the Longs. As the trial court found in its judgment, "[attorney's] machinations belie any claim of good faith or mere zealous advocacy. They evidence an attitude of indifference to the orderly process of the Courts of this state." To cite only some of the more egregious examples of this conduct, appellants' attorney placed the name of an attorney on the pleadings of the instant lawsuit willfully and wantonly without that attorney's permission. Moreover, the trial court found that appellants' attorney "withheld service of process by concealing the existence of this lawsuit. His conduct in the federal case was similar; to this date he *still* has not attempted service in that case." On appeal, appellants' attorney does not deny any of the allegations or even attempt to explain why this morass of motions, lawsuits, and writs before various courts in the Kansas City area was necessary to advocate for his clients. Therefore, we find that the trial court did not abuse its discretion in granting the motions for sanctions and for awarding attorney's fees. Point denied.

### III.  CONCLUSION

Based on the foregoing, and after a thorough review of the record on appeal, we affirm the trial court's ruling.

ROBERT G. ULRICH and EDWIN H. SMITH, JJ. concur.