In the

# United States Court of Appeals

### For the Seventh Circuit

No. 00-3789

DELVIN C. PAYTON, et al.,

*Plaintiffs-Appellants,*

*v.*

COUNTY OF KANE, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 99 C 8514—**Elaine E. Bucklo**, *Judge.*

ARGUED OCTOBER 31, 2001—DECIDED SEPTEMBER 3, 2002

Before BAUER, COFFEY, and DIANE P. WOOD, *Circuit Judges.*

DIANE P. WOOD, *Circuit Judge.* Delvin Payton and five other former arrestees who were released on bail from Illinois county jails filed this putative class action to dispute the counties' practice (authorized by Illinois law) of imposing a bail fee, above and beyond the set bail amount, as a condition for release on bail. The plaintiffs moved for the certification of a plaintiff class including all individuals affected by the procedure in 19 named counties, while the defendants moved to dismiss the entire case. The district court agreed with the defendants, dismissed the action, and denied as moot the motion for class certification. For the reasons set forth in this opinion, we reverse and remand for further proceedings.

**I**

For several years, at least 19 out of Illinois's 102 counties have followed a practice of charging a "bail fee" to detainees who are released on bail or on their own recognizance. This fee varies between $1 and $45, depending on the county, and is collected above any bail amount that is due.

In 1999, the Illinois General Assembly passed Illinois Public Act 91-0094, amending the Counties Code and providing that bond fees may be added to the required bond. The section was codified as part of the Illinois Bond Statute, 725 ILCS 5/110-7(b), as amended (the Act). The Act, which became effective on January 1, 2000, provides that "[t]he fees of sheriffs in counties of the first and second class, except where increased by county ordinance under this Section, shall be as follows: [. . .] For taking special bail, $1 in each county." 55 ILCS 5/4-5001.

The Act also empowers county boards to increase the statutory fee by ordinance "if the increase is justified by an acceptable cost study" showing that the minimum $1 fee is not "sufficient to cover the costs of providing the service." 55 ILCS 5/4-5001. Dealing with the deposit of bond, 725 ILCS 5/110-7(b) provides that "[u]pon depositing this sum *and any bond fee authorized by law*, the person shall be released from custody subject to the conditions of the bail bond" (emphasis added). The plaintiffs allege that the fee is imposed even when the detainee is released on her own recognizance without posting bail. Regardless of county-specific increases, every detainee posting bond in Illinois is charged at least the statewide $1 minimum. Kane County charges an $11 fee, DuPage County charges $15, and all other counties charge between $1 and $45.

Plaintiffs Payton, Wallace, Cannon, and Clay were confined to the Kane County jail after February 1, 1998, and were granted bail by the Circuit Court of the Six-

teenth Judicial Circuit. They were required to pay an $11 bond fee per bond posted before their release from custody. Plaintiffs Corson and Carson were confined to the DuPage County jail after October 1, 1997, and were granted bail by the Circuit Court of the Eighteenth Judicial Circuit. They paid a $15 bond fee for each bond posted as a condition of release from custody.

No plaintiffs are named who were charged a bond fee by any county other than Kane and DuPage. The complaint alleges, however, that these fees were imposed on an unknown number of individuals. Based on the generality of the practice, as now mandated by the Act, the named plaintiffs sought to represent a class consisting of (a) all persons confined to the county jail of each defendant county, on or after the inception of the bond fee practice, who posted a cash bond and paid a bond fee to secure their pretrial release from jail; (b) all persons confined to the county jail of each defendant county who were granted personal recognizance bonds and paid a bond fee to secure their pretrial release; (c) all persons confined to the county jail on or after the inception of the bond fee practice who do not have the funds to pay the bond fee to secure their pretrial release but can otherwise satisfy the bond requirements; and (d) all persons confined to the county jail of each county on or after January 1, 2000, who have posted or will post bail to obtain pretrial release. The named plaintiffs, of course, have suffered directly only from the conduct of (respectively) the counties of Kane and DuPage.

The district court granted the defendants' motion to dismiss on September 25, 2000, finding that the named plaintiffs lacked standing to pursue the entire lawsuit. It did not reach the question of class certification.

## II

Plaintiffs present three issues for review. First, they claim that the class has standing to sue all defendants who are "juridically linked" together, in that they all follow the Illinois bail fee statute, even if not all members of the class suffered injury from a particular defendant county. Second, they argue that the district court erred in denying their motion for class certification, asserting that it should have allowed the plaintiffs to proceed as a class at least against the two counties that had directly injured them. Third, if all else fails, they argue that at the very least the court should not have dismissed their second amended complaint between individually named plaintiffs and the counties that actually released them, as those are run-of-the-mine § 1983 cases. Logic dictates that we analyze the issues in reverse order, for if the plaintiffs fail on the more limited issues, they certainly cannot prevail on their broader claims.

We review a dismissal for lack of standing *de novo*. *Rifkin v. Bear Stearns & Co., Inc.*, 248 F.3d 628, 631 (7th Cir. 2001). As the class certification request was denied as moot, there is nothing for us to review on that point other than the correctness of the mootness decision, which is affected by the district court's standing ruling. Those present legal questions which we will review *de novo.*

### A.  The Individual Cases

The named plaintiffs set forth individual claims against DuPage and Kane Counties—the counties from whose jails they were released upon posting of bond and the payment of the contested bond fee. It is hard to see how they could have failed to state a claim under the notice pleading regime of FED. R. CIV. P. 8, which the Supreme Court recently re-emphasized in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, ___, 122 S. Ct. 992, 998 (2002). See also

*Walker v. Thompson*, 288 F.3d 1005, 1010 (7th Cir. 2002) (Ripple, J., concurring). In their complaint, Payton, Wallace, Cannon, and Clay allege that they were confined after February 1, 1998, to the county jail of Kane County, and Corson and Carson allege that they were confined in the DuPage County jail. The six individuals further allege that they were required to pay a bond fee ranging between $11 and $15 to the respective counties as a condition of their release. This policy, they claim, violates their rights under the Eighth and Fourteenth Amendments to the U.S. Constitution, thus entitling them to relief under 42 U.S.C. § 1983.

The district court did not mention any grounds for the dismissal of the individual claims of these named plaintiffs against Kane and DuPage Counties, nor did it explain why it thought that they lacked standing to sue. "Article III requires that the plaintiff has suffered an 'injury in fact' which is fairly traceable to the challenged action of the defendant and 'likely,' as opposed to merely 'speculative,' to be 'redressed by a favorable decision.'" *Doe v. County of Montgomery*, 41 F.3d 1156, 1159 (7th Cir. 1994) (citations omitted); see also *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The individuals easily meet these requirements: at the very least, they suffered a monetary injury when they were required to make the extra payment; the injury is traceable to the policy of each jail; and it can be redressed by a lawsuit.

It appears instead that what the district court meant to say was that the plaintiffs lacked "standing" to bring a class action. However, putting to one side the problem inherent in conflating the standing inquiry with the inquiry under Rule 23 about the suitability of a plaintiff to serve as a class representative, the proper remedy for this shortcoming is not dismissal of the entire action, but rather an order denying class certification and permitting the case to continue as an individual suit. We

accordingly reverse this part of the district court's order and remand for the reinstatement of the individual actions.

## B.  Class Action Against DuPage and Kane Counties

It is also unclear why the district court thought that the proposed class action against DuPage and Kane Counties could not go forward (at least to the point of a Rule 23 certification decision), since named representatives from each of those jails were before the court, and the existence of the state law strongly suggests that these were not the only people who paid a release fee. Indeed, on the same day as it dismissed the present action, the district judge granted class certification in two cases based on the same occurrences, one brought by plaintiffs challenging Kane County practices (*Coleman v. County of Kane*, No. 00-C-295, 2000 U.S. Dist. LEXIS 17438 (N.D. Ill. Sept. 26, 2000)) and the other challenging DuPage County practices (*Ringswald v. County of DuPage*, No. 00-C-296, 2000 U.S. Dist. LEXIS 17437 (N.D. Ill. Sept. 26, 2000)). The district court did not offer a reason why the named plaintiffs in this case failed to satisfy the requirements of class certification, unlike those in *Ringswald* and *Coleman*, nor did it discuss whether those two actions in some way precluded the certification requested here. The defendants in *Ringswald* and in *Coleman* were granted summary judgment on the federal claims on October 11, 2001. We express no opinion on the effect that the outcome of these cases might have on the merits of the suit at bar. We note only that a determination of the propriety of class certification should not turn on likelihood of success on the merits. See *West v. Prudential Secs., Inc.*, 282 F.3d 935, 938 (7th Cir. 2002); *Bieneman v. City of Chicago*, 838 F.2d 962, 964 (7th Cir. 1988). (It is a different matter if the proposed named plaintiff loses on the merits prior to certification, but we do not have that situation here yet.)

Given our reversal of the dismissal of the individual actions, we also reverse the district court's judgment dismissing the putative class actions against DuPage and Kane Counties and remand for further appropriate proceedings. On remand, the parties must consider among other things the possible consequences of the outcome in *Ringswald* and *Coleman* for this suit.

### C.  Class Action Against Other 17 Counties

We turn now to the thorniest issue in this case: the propriety of maintaining a suit against the other 17 counties, for which we have no specific named plaintiffs.

We can dispose at the outset of one of the appellants' arguments. They contend that the district court should have certified both a plaintiff and a defendant class. App. Br. at 11. But no one really asked for certification of a defendant class of 19 counties, or all Illinois counties, and thus we cannot fault the district court for failing to do so. The motion for class certification filed on April 17, 2000, discusses only the requirements for a plaintiff class and argues only the Rule 23 requirements with respect to the plaintiffs. Even though the motion concludes by asking summarily for "an order certifying this action be maintained as a class action with regard to both plaintiffs and defendants," the motion was insufficient to serve as a proper request for a defendant class. Moreover, it is too late to request such certification for the first time on appeal. Defendant classes must be treated with great care in any event, as we have noted in the past, see *Ameritech Ben. Plan Comm. v. Communication Workers of Am.*, 220 F.3d 814, 820 (7th Cir. 2000), *Henson v. East Lincoln Township*, 814 F.2d 410, 412-15 (7th Cir. 1987); they certainly should not be created without full consideration.

But if the defendant counties, 19 in all, are not linked as a class, how can they all be sued by a class represented

by six named plaintiffs who have direct claims against only two of them? In some sense, this is a classical problem of standing: to bring a valid case, a plaintiff must allege that a defendant—the very defendant sued—has somehow wronged her in a legally cognizable way. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The conduct complained of must be "fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court." *Id.* at 563 (citation in brackets omitted). And whatever else Payton and the other plaintiffs may show the counties of Kane and DuPage did to them, no one is claiming that, for instance, Effingham County in any way harmed one of the named plaintiffs.

The real question, therefore, is whether for standing purposes we may look only to the named plaintiffs, or if, once the requirements of Rule 23 are met, the true plaintiff is the class as a whole. If the latter is true, then the question arises whether it is enough that *some* members of the class were injured by at least one named defendant. (There is obviously no logistical reason why all 19 counties cannot be named as separate defendants.) The plaintiffs argue that both of those propositions are correct: the class action device does indeed entitle the group as a whole (represented by people from less than all counties) to sue all 19 counties, and it is enough that someone in the class was injured by one of the defendants. In this respect, they invoke the so-called "juridical link" doctrine, which would entitle them to sue all similarly situated counties in a single case if they can show that their injuries arise out of a common legal rule (the Act) that is binding on, and followed to various degrees by, all the named counties.

The juridical link doctrine arose out of the Ninth Circuit's decision in *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461 (9th Cir. 1973). *LaMar* held that a plaintiff

without a cause of action against a specific defendant cannot "'fairly and adequately' protect the interests of those who do have such causes of action," for purposes of Rule 23(a). *Id.* at 466 (citations omitted). Nevertheless, and relevantly to our case, the court went on to hold that if the plaintiffs as a group—named and unnamed—have suffered an identical injury at the hands of several parties related by way of a conspiracy or concerted scheme, or otherwise "juridically related in a manner that suggests a single resolution of the dispute would be expeditious," the claim could go forward. *Id.*

This court has never addressed the juridical link doctrine squarely, even though several district courts within this circuit have accepted it. See, *e.g.*, *Weiss v. Winner's Circle of Chicago, Inc.*, No. 91 C 2780, 1995 WL 755328, at *2 (N.D. Ill. Dec. 14, 1995); *Hopson v. Schilling*, 418 F. Supp. 1223, 1238 (N.D. Ind. 1976). We are skeptical that the use of this terminology is conducive to sound analysis of the kind of problem presented here: the real issues are whether the plaintiff class was injured by the defendants, and if so, whether the claims of the proposed named plaintiffs are representative. Post-*LaMar* cases from other courts have suggested that if all the defendants took part in a similar scheme that was sustained either by a contract or conspiracy, or was mandated by a uniform state rule, it is appropriate to join as defendants even parties with whom the *named* class representative did not have direct contact. See, *e.g.*, *Moore v. Comfed Sav. Bank*, 908 F.2d 834, 838-39 (11th Cir. 1990); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423-24 (6th Cir. 1998). See also *Murer v. Montana State Comp. Mut. Ins. Fund*, 849 P.2d 1036, 1039 (Mont. 1993) (a "juridical link [exists] where the various defendants are related instrumentalities of a single state, such as various law enforcement agencies").

In *Fallick*, the Sixth Circuit, using juridical link analysis, concluded that once a plaintiff had established a claim against one of the named defendants, the rest of the determination about the suitability of class certification would proceed as usual under Rule 23. *Id.* at 423. The court reasoned that, in the presence of the concerted action contemplated in *LaMar*, it is not necessary that each named plaintiff have individual standing to sue each named defendant. Instead, a plaintiff who has standing to sue at least one of the named defendants also "has standing to challenge a practice even if the injury is of a sort shared by a large class of possible litigants." *Id.*

Similarly, the Eleventh Circuit in *Moore* held that a group of named plaintiffs could bring a claim against several defendants—including those against whom the named plaintiffs did not have a direct claim—finding that they were needed for "complete relief" because of their linked action. 908 F.2d at 838-39. As reported in *Moore*, the district court had stated in the opinion below that "[o]ther named plaintiffs could be supplied to match with each named defendant but it would be unwieldy to do so. Each plaintiff and the defendants have connection to each other through Land Bank equity. The case is simpler and more economical with the class of plaintiffs and the named defendants." *Id.* at 838. The court also noted that "juridical links" were most often found when a state or local statute required common action.

Finally, relying on *Moore*, the Supreme Judicial Court of Massachusetts recently endorsed the juridical link doctrine for a plaintiff class in which the named plaintiffs were not directly harmed by all the named defendants, analogizing the analysis to that performed under permissive joinder. See *Weld v. Glaxo Wellcome Inc.*, 746 N.E.2d 522, 530 (Mass. 2001). See generally William D. Henderson, Cmt., *Reconciling the Juridical Links Doctrine with the Federal Rules of Civil Procedure and Article III*, 67 U. CHI.

L. REV. 1347 (2000) (discussing the juridical link doctrine in the context of the rules on joinder and class actions).

In our case, given that the bail bond fee is imposed pursuant to a state statute, and that county sheriffs are for this purpose an arm of the state, see *Scott v. O'Grady*, 975 F.2d 366, 371 (7th Cir. 1992), it is reasonable for the putative plaintiff class to try to hold all counties accountable within one suit. The constitutionality of a bond fee (whether it is $1 or $45) should not differ from one county to the next, when such a fee is imposed pursuant to the same statute.

We come therefore to the central issue in this case, which is whether these named plaintiffs may represent a class that includes people from the other 17 named counties. We have begun our analysis with the question of class certification, mindful of the Supreme Court's directive to consider issues of class certification prior to issues of standing. See *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999): "the class certification issues are . . . logically antecedent to Article III concerns, and themselves pertain to statutory standing, which may properly be treated before Article III standing. Thus the issue about Rule 23 certification should be treated first." *Id.* at 831 (citations omitted). This involves defining the class and assessing whether the proposed class representatives can satisfy all four requirements of Rule 23(a), and at least one of the categories of Rule 23(b).

Because the district court never undertook this inquiry, it would be premature for this court to do so without a proper record. We note only that Rule 23(a) inevitably requires consideration of the typicality of the claims presented by the named parties (Rule 23(a)(3)), which allows exploration of the question whether the essence of the suit relates to the state statute or if the named representatives' claims are more particular to each indi-

vidual county. The numerosity, commonality, and adequacy of representation factors will also require further development on remand, subject to whatever ruling the court may make with respect to the related class actions and with respect to the individual claims. Because this action was pending at the time the *Ringswald* and *Coleman* suits were decided, and because the plaintiffs here are seeking monetary relief in part, the court will also need to consider whether the other litigation is capable of barring claims that would have required the procedural protections of Rule 23(b)(3), including especially the right to opt out of the related case.

We close with a few observations about the use of the class action device to consolidate claims that are common to plaintiff class members, where the defendants have not had the same interactions with each member of the class. We understand *Ortiz* to rest on the long-standing rule that, once a class is properly certified, statutory and Article III standing requirements must be assessed with reference to the class as a whole, not simply with reference to the individual named plaintiffs. The certification of a class changes the standing aspects of a suit, because "[a] properly certified class has a legal status separate from and independent of the interest asserted by the named plaintiff." *Whitlock v. Johnson*, 153 F.3d 380, 384 (7th Cir. 1998). See also *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980); *Franks v. Bowman Transp. Co., Inc.*, 424 U.S. 747, 753 (1976); *Sosna v. Iowa*, 419 U.S. 393, 399 (1975). The Supreme Court underscored in *Sosna* the independent legal status of class actions from the original plaintiff and held that, where a class has been properly certified, even the mootness of the named plaintiff's individual claim does not render the class action moot—very much a standing inquiry. 419 U.S. at 399-401. See *Franks*, 424 U.S. at 753-55 (applying *Sosna* even though the named plaintiff's

claim did not involve an issue "capable of repetition, yet evading review"). In *Geraghty*, the Court extended this principle and held that a class action does not become moot upon expiration of the named plaintiff's substantive claim even when class certification was denied in the district court, 445 U.S. at 404, and the named plaintiff could continue to argue on appeal for reversal of the district court's denial of class certification despite the mootness of his individual claim. See *id.* at 404-05. We conclude that the plaintiffs may be entitled to represent a class suing all 19 defendant counties if, under the reasoning of *LaMar* and its progeny, they fulfill all the requirements of Rule 23.

This question of "standing" is just one part of a rather complex network of rules regulating class actions, under which the named plaintiff is the critical actor for some purposes, every individual member of the class is relevant for other purposes, and the class as a whole is the focal point for yet other purposes. For instance, the citizenship requirement for purposes of diversity jurisdiction in a class action hinges entirely on the citizenship of the named plaintiffs. See *Supreme Tribe of Ben-Hur v. Cauble*, 255 U.S. 356 (1921). Until the enactment of 28 U.S.C. § 1367, in contrast, amount in controversy rules had to be satisfied by each member of the class, according to *Zahn v. International Paper Co.*, 414 U.S. 291, 301 (1973); there is currently a split in the circuits on the question whether § 1367 legislatively overruled *Zahn.* Compare *Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928, 930-31 (7th Cir. 1996) (*Zahn* overruled by § 1367); and *Rosmer v. Pfizer Inc.*, 263 F.3d 110, 114 (4th Cir. 2001) (same); with *Trimble v. Asarco, Inc.*, 232 F.3d 946, 962 (8th Cir. 2000) (*Zahn* still good law despite § 1367); and *Meritcare v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 218-20 (3d Cir. 1999) (same). See also *Free v. Abbott Labs.*, 529 U.S. 333 (2000) (Court divides 4-4 on this issue). The class

is treated as an entity for purposes of claim preclusion, assuming that it was adequately represented. See, *e.g.*, *Tice v. American Airlines*, 162 F.3d 966, 972 (7th Cir. 1998).

We see no reason to truncate potentially efficient uses of the class action device when they are otherwise not prohibited and here the class action device may be superior to 19, or 102, different cases in each Illinois county challenging the effects of the same state statute. Compare *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1014-15 (7th Cir. 2002). A Rule 23 analysis, which was never performed in this case, may suggest that there is little trouble with the named plaintiffs representing this class under a standard "commonality" or "adequacy of representation" inquiry—considerations we leave to the district court. Most importantly, there are cases where appropriate relief may only be obtained through one broad suit, and it will be impossible to find a named plaintiff to match each defendant. See, *e.g.*, *Ragsdale v. Turnock*, 841 F.2d 1358 (7th Cir. 1988). If the defendants with whom the named representative did not interact directly are following a common statute (and this common factor assures that the representative has the same legal claim as the unnamed parties—or, to use the terminology other courts have adopted, the defendants are "juridically linked"), we see nothing in either standing doctrine or Rule 23 that automatically precludes use of the class action device.

This is not a case where the named plaintiff is trying to piggy-back on the injuries of the unnamed class members. That, of course, would be impermissible, in light of the fact that "a named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the

back door of a class action." *Allee v. Medrano*, 416 U.S. 802, 828-29 (1974) (Burger, C.J., dissenting). See also *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *Bailey v. Patterson*, 369 U.S. 31, 32-33 (1962). These putative representatives were personally injured by the operation of the very same statute that caused the injuries to all other members of the proposed class.

## IV

For the foregoing reasons we REVERSE the judgment of the district court and REMAND this case for further proceedings in accordance with this opinion.

A true Copy:

      Teste:

                        _____
                        *Clerk of the United States Court of*
                        *Appeals for the Seventh Circuit*